## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| **ANDRE CRAVENS,** *individually and on behalf of all others similarly situated*, | **Case No.: 9:24-cv-80400** |
| Plaintiff, | |
| v. | |
| **GARDA CL SOUTHEAST, INC.; GARDAWORLD CASHLINK LLC;** and **GARDAWORLD CASH SERVICES, INC. d/b/a GARDAWORLD CASH U.S.,** | |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CO-LEAD COUNSEL AND TO SET SCHEDULE

Plaintiff, Andrew Cravens, in the above-captioned action ("Plaintiff"), with the consent of Plaintiffs in the related actions set forth below ("Related Actions"), respectfully requests that the Court (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the Related Actions, as well as any other future actions filed or transferred related actions against Defendants Garda CL Southeast, Inc.; GardaWorld Cashlink LLC; and GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash U.S. (collectively "GW") and United American Security, LLC in connection with Garda's data breach announced on or about March 28, 2024, under the new case style: "*In re GardaWorld Cashlink LLC Data Breach Litigation*"; (2) appoint Jeff Ostrow of Kopelowitz Ostrow P.A. and John A. Yanchunis of Morgan & Morgan as Interim Co-Lead Counsel ("Proposed Interim Co-Lead Counsel"); (3) administratively close the Related Actions, including any of GW's responsive pleading deadlines, and require the filing of a Consolidated Class Action Complaint

within 20 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for GW's response(s) to the Consolidated Class Action Complaint as 30 days after the Consolidated Class Action Complaint is filed, and in the event that GW's response(s) are a motion to dismiss, set the deadline of 30 days thereafter for Plaintiffs' response(s) thereto, followed by 15 days thereafter for GW's reply(ies).

## I.    <u>INTRODUCTION</u>

Plaintiff, Andre Cravens, filed his Class Action Complaint in this action on April 2, 2024, seeking to hold GW liable for their disclosure of personally identifiable information ("PII") belonging to Plaintiff and approximately 40,000 other individuals affected by a data breach of Garda's network systems announced on or about March 28, 2024 ("Data Breach"). There are now five Related Actions to this Action filed in this Court, each arising from same Data Breach and operative facts and asserting substantially identical claims on behalf of overlapping putative classes, thus making consolidation into the case with the lowest case number appropriate. Along with this action, the following Related Actions have been filed:

- *Angelle v. GardaWorld CashLINK LLC*, Case No. 9:24-cv-80403-RLR (S.D. Fla.), filed April 3, 2023;

- *Archambeau, et al. v. GardaWorld Corp., et al.*, Case No. 9:24-cv-80404-RLR (S.D. Fla.), filed April 3, 2024;

- *Viveros v. Garda CL Southeast, Inc., et al.*, Case No. 9:24-cv-80411-RLR (S.D. Fla.), filed April 5, 2024;

- *Haley v. Garda World Security Corp., et al.*, Case No. 9:24-cv-80418-RLR (S.D. Fla.), filed April 5, 2024; and

- *Gawronski v. GardaWorld CashLINK, LLC*, Case No. 9:24-cv-80438-RLR (S.D. Fla.), filed April 9, 2024.

Moreover, after a period of meeting and conferring among Plaintiffs' counsel who have filed the Related Actions, Plaintiffs' counsel are pleased to report they have reached an agreement

on a proposed leadership structure. Rather than a complex, multi-tiered leadership structure, Plaintiffs' counsel agreed to only two Interim Co-Lead Counsel on behalf of all cases. Proposed Interim Co-Lead Counsels' qualifications are described hereinbelow.

## II.    COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.    The Data Breach

GW is one of the world's largest privately-owned security and risk management companies. Plaintiffs in this action and the Related actions allege that GW collected and inadequately maintained their and the putative class members' PII. Plaintiffs allege they entrusted GW with their PII prior to the Data Breach. In GW's notice of breach letter dated March 28, 2024 ("Notice Letter"), GW advised Plaintiffs that their PII was compromised in the Data Breach, including their names, dates of birth, health information, addresses, and Social Security numbers. In addition, GW stated that it first detected suspicious activity on its computer systems on or around November 16, 2023—over four months before the Notice Letter was sent.

### B.    Procedural History and Related Actions

Five other similar actions, the Related Actions identified above, were filed in this District. Each one focuses on the same factual premise—the Data Breach—and asserts substantially identical (if not identical) claims on behalf of the same or overlapping putative classes, as set forth below. Any other case arising out of the Data Breach is also a Related Action.

1.    On April 2, 2024, Plaintiff, Andre Cravens, filed the instant class action lawsuit against Garda CL Southeast, Inc.; GardaWorld Cashlink LLC; and GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash U.S., asserting claims for (i) negligence, (ii) breach of implied contract, (iii) invasion of privacy, (iv) unjust enrichment, (v) breach of fiduciary duty, (vi) violation of the Florida Deceptive and Unfair Trade Practices Act, and (vii) declaratory relief.

2.      On April 3, 2024, Plaintiff, Jeremy Angelle, filed a class action lawsuit against GardaWorld Cashlink LLC d/b/a GardaWorld Cash (Case No. 9:24-cv-80403-RLR), asserting claims for (i) negligence/negligence *per se*, (ii) breach of implied contract, (iii) unjust enrichment, and (iv) declaratory relief.

3.      On April 3, 2024, Plaintiffs, Dawn Archambeau and Shanta Malone, filed a class action lawsuit (Case No. 9:24-cv-80404-RLR) against Garda CL Southeast, Inc.; GardaWorld Cashlink LLC; and GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash U.S., asserting claims for (i) negligence, (ii) negligence *per se*, (iii) breach of implied contract, (iv) unjust enrichment, and (v) declaratory relief.

4.      On April 5, 2024, Plaintiff, Dianna J. Viveros, filed a class action lawsuit (Case No. 9:24-cv-80411-RLR) against Garda CL Southeast, Inc.; GardaWorld Cashlink LLC; and GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash U.S., asserting claims for (i) negligence, (ii) breach of implied contract, (iii) unjust enrichment, (iv) breach of fiduciary duty, and (v) violation of the Florida Deceptive and Unfair Trade Practices Act.

5.      On April 5, 2024, Plaintiff, Joseph Tyler Hayler, filed a class action lawsuit (Case No. 9:24-cv-80418-RLR) against GardaWorld Security Corp.; United American Security, LLC; and GardaWorld Cash Services, Inc., asserting claims for (i) negligence, (ii) negligence *per se*, and (iii) breach of implied contract.

6.      On April 9, 2024, Plaintiff, Ryan Gawronski, filed a class action lawsuit (Case No. 9:24-cv-80438-RLR) against GardaWorld Cashlink, LLC d/b/a GardaWorld Cash U.S., asserting claims for (i) negligence, (ii) breach of implied contract, (iii) unjust enrichment, and (iv) violation of the Illinois Consumer Fraud Act.

C.   **Consolidation of the Actions and Appointment of Leadership**

The Related Actions before this Court are substantially the same; thus, consolidation is appropriate. Each lawsuit arises from the same common set of alleged operative facts: the Data Breach. Due to each Plaintiffs' reliance on the same set of alleged operative facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and Court resources. Accordingly, and to move this consolidated action forward efficiently and effectively, Plaintiffs now seek the Court's approval of Plaintiffs' proposed leadership structure.

### III.   ARGUMENT

A.   **The Related Actions Should Be Consolidated.**

Federal Rule of Civil Procedure 42(a) reads:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added); *Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). "This rule is a codification of a trial court's inherent managerial power 'to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel and for litigants." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).

"District court judges in this circuit have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Eghnayem*, 873 F.3d at 1313–14 (citing *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995)). To that end, courts have recognized that consolidation is appropriate in data breach cases where two or more cases arise from the same occurrence. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-

23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("The Undersigned has reviewed the parties' pleadings in the . . . above-captioned cases . . . it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

The Eleventh Circuit has laid out the factors a trial court must consider in weighing whether to consolidate: "(1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues; (2) the burden on parties, witnesses and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple suits as against a single one; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Hendrix*, 776 F.2d at 1495; *see also In re University of Miami COVID-19 Tuition and Fee Refund Litig.*, No. 20-22207-CIV-SINGHAL, 2020 WL 9071422, at *1 (S.D. Fla. Aug. 5, 2020) (quoting *Eghnayem*, 873 F.3d at 1313–14).

All the factors are met here. First, the complaints here all relate to common factual allegations and legal theories. Even a cursory review shows that each Related Action alleges virtually identical facts and legal questions, all arising from one factual event—the Data Breach—which plaintiffs in each action allege was a result of Defendants' failure to protect Plaintiff's and the putative class members' PII. Additionally, the legal claims asserted by each plaintiff are substantially similar, all including a negligence claim and a breach of implied contract claim, and most sharing other substantive claims including breach of fiduciary duty, unjust enrichment, and a claim for declaratory relief. Additionally, each lawsuit seeks certification of similar classes.

Absent consolidation, it is possible multiple overlapping classes could be certified. Therefore, the first factor is met: the potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications.

As for the second factor, the burden on the parties, witnesses, and judicial resources will be substantially lightened by consolidation. All the cases before this Court have the same procedural posture. Each has a complaint with no responsive pleading. Therefore, consolidation will not delay any of the proceedings. Moreover, no plaintiff opposes consolidation, which will allow plaintiffs to jointly prosecute the case, share discovery, and avoid the possibility of the Court certifying overlapping classes. Lastly, judicial resources will be conserved by presiding over one consolidated case rather than numerous separate cases because this will reduce the number of motions, briefings, hearings, and trials before the Court. Therefore, the second factor is met here. *See Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016) (affirming consolidation when "there was substantial overlap in the issues, facts, evidence, and witnesses. Separate trials would have resulted in wasteful litigation and duplication of judicial efforts."); *Webber v. Nat'l Gen. Assurance Co*., No. 4:14CV490-MW/CAS, 2015 WL 11109452, at *4 (N.D. Fla. Nov. 3, 2015) ("[F]orcing the parties to present evidence bearing on [common] question[s] in two separate trials would be highly inefficient.").

The third factor is certainly met here: litigating numerous separate causes of action instead of one consolidated action would take substantially more time for the Court and the Parties. Therefore, "the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation." *Kaplan*, 20156 WL 9383330, at *2.

Finally, the fourth factor—relative expense to all parties concerned—militates in favor of

consolidation, because discovery costs are likely to be dramatically lessened by litigating in one consolidated case rather than ten (and counting) separate cases. *See Citizens Ins. Co. of the Midwest for deWitt v. Stone*, No. 1:16-CV56-MW/GRJ, 2016 WL 9275409, at *5 (N.D. Fla. Nov. 30, 2016) ("Both matters arise out of the same incident and involve similar (if not identical) allegations . . . and will likely involve the same witnesses and evidence. For those same reasons, litigating these cases separately would impose on the parties—and the United States taxpayers—unnecessarily excessive costs.").

Therefore, the Court should consolidate these (and all future) related cases.

### B.     Proposed Interim Co-Lead Counsel Meet the Requirements of Rule 23(g).

Federal Rule of Civil Procedure 23(g)(3) authorizes the appointment of interim class counsel, instructing that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). As explained in the Advisory Committee Notes accompanying the Rule, "in many cases the need to progress toward the certification determination" or to otherwise "protect the interests of the putative class" "may require designation of interim counsel." Fed. R. Civ. P. 23, Advisory Committee Notes. In particular, as set forth in the *Manual for Complex Litigation (4th)* ("Manual"), appointment of interim counsel may be appropriate after consolidation of actions, to achieve efficiency and economy without jeopardizing fairness to the parties. § 21.11.

Although Rule 23(g)(3) is silent as to the standards for appointing interim counsel, "courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig*., 2020 WL 13561433, at *1; *see also In re: Disposable Contact Lens Antitrust*., No. 3:15-MD-2626-J-20JRK, 2015 WL 10818781, at *1 (M.D. Fla. Oct. 7, 2015) (factors used to determine adequacy of class counsel

under Rule 23(g)(1) "appl[y] equally to the appointment of interim lead counsel before certification"); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).

Rule 23(g)(1)(A) provides, in relevant part, that in appointing class counsel the Court must consider the following factors:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class.

Moreover, under Rule 23(g)(4), lead class counsel "must fairly and adequately represent the interests of the class." Thus, in addition to the above factors, the Court thus may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

In class action cases such as this, "appointing seasoned lead counsel is one of the district court's key organizational tools." *In re: Disposable Contact Lens Antitrust.*, 2015 WL 10818781, at *1. "The 'designation of interim class counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *Id.* (citing *Manual* at § 21.11) (alterations omitted). In other words, "[s]election of interim lead counsel facilitates 'efficiency and economy without jeopardizing fairness to the parties.'" *In re: Disposable Contact Lens Antitrust.*, 2015 WL 10818781, at *1. Accordingly, "[t]he appointment of interim class counsel is recommended early, before class certification to protect the interests of the putative class." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 2020 WL

13561433, at *1 (citing Fed. R. Civ. P. 23(g)).

In light of this aim for organizational efficiency, "[c]ourts normally take a deferential approach in reviewing the lead plaintiff's selection of class counsel." *Arrington v. Burger King Worldwide, Inc.*, No. 18-24128-CIV-MARTINEZ/AOR, 2019 WL 13063501, at *1 (S.D. Fla. Mar. 21, 2019) (citing *Cooper v. DJSP Enters., Inc.*, No. 10-61261-CIV-ZLOCH/ROSENBAUM, 2010 WL 11552871, at *4 (S.D. Fla. Nov. 24, 2010)).

### 1. Proposed Interim Co-Lead Counsel Have Thoroughly Identified and Investigated the Claims.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

Moore's Fed. Prac. § 23.120(3)(a) (3d. Ed. 2007).

Here, Proposed Interim Co-Lead Counsel's work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the proposed class. Proposed Interim Co-Lead Counsel have diligently investigated and advanced this litigation, including through analyzing the circumstances surrounding the Data Breach, researching legal claims, drafting initial pleadings, and organizing Plaintiffs and counsel to move the litigation forward.

Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed

Interim Co-Lead Counsel's efforts at self-organization were successful, as evidenced by this Motion.

### 2. Proposed Interim Co-Lead Counsel Are Experienced in Handling Class Actions and Other Complex Litigation.

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, Proposed Interim Co-Lead Counsel have substantial experience handling class actions involving data breach and data privacy cases, and has been appointed to leadership positions in several high-profile data breach cases. As outlined below, Proposed Interim Co-Lead Counsel are highly qualified to lead this litigation.

#### a. Jeff Ostrow

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in approximately 100 pending data breach cases. Three notable cases in which he is part of the leadership structure, all among the largest currently pending, include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals, where he is Co-Lead Counsel for Plaintiffs; *Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), an MDL involving six million

individuals, where he is MDL Co-Lead Counsel; and *In re HCA Healthcare Data Security Litigation*, No. 3:23-cv-00684 (M.D. Tenn.), affecting eleven million people, where he is on the Plaintiffs' Executive Committee.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, Kopelowitz Ostrow P.A. is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's

efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked cohesively with Plaintiffs' counsel in other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and class members.

### b. John A. Yanchunis

Morgan and Morgan is a leading civil trial law firm representing consumers and commercial clients nationwide. With over 1000 lawyers, and more than 3,000 non-lawyer employees, Morgan & Morgan is the largest plaintiffs' firm in the nation. Morgan & Morgan maintains offices throughout the United States. Among its lawyers are former state attorney generals and present and former members of various state legislatures.

Morgan & Morgan has a dedicated Complex Litigation Group of which the Class Action Department is a part. The Class Action Department is staffed with lawyers, paralegals, and retired FBI agents serving as investigators—committed to representing consumers in complex litigation, MDL proceedings and class action cases throughout the country. It has achieved many remarkable results in class litigation, including the settlement of *In re Black Farmers Discrimination Litigation*, no. 08-0511 (D.C. Oct. 27, 2017), where one of its partners served as co-lead. The case

resulted in a settlement with the United States Government in the amount of $1.2 billion for African American farmers who had been systematically discriminated against on the basis of race, in violation of the Fifth Amendment to the United States Constitution, the Equal Credit Opportunity Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act. The Class Action section is a part of Morgan & Morgan's Complex Litigation group, has assembled a talented, ethnically diverse team of lawyers. These lawyers are dedicated to document review, deposition preparations and deposition summaries. It is also assisted by a separate section of 8 lawyers, comprised of former federal law clerks at the District and Circuit level, who assist the Class Action section with research and writing support. For its work in data privacy litigation in 2023, it was honored recently as Litigation Department of the Year in the state of Florida by ALM/Law.Com.

John A. Yanchunis leads the class action section of the law firm. His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., S. D. Tex.—has concentrated on complex litigation and spans over 43 years, including consumer class actions for more than two-thirds of that time. As a result of his extensive experience in class litigation, including privacy and data-breach litigation, he regularly lectures nationally and internationally at seminars and symposiums regarding class litigation and privacy litigation. He is a member of The State Bar of Texas and The Florida Bar. He has served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices. In 2014, he was recognized by the National Law Journal as a trailblazer in the area of privacy litigation, and in 2019, 2020 and 2023, he was recognized by Law360 as one of a very small number of MVPs in the United States in the area of privacy and cyber security litigation. For his work in the area of privacy litigation, he was awarded

Lawyer of the Year in the state of Florida by ALM/Law.Com in 2022, and in 2024 , he was named a finalist for Lawyer of the Year in the state of Florida (1 of 3). In 2023, he was also recognized by Law360 as a Titan of the Plaintiffs' Bar, and Consumer Protection Lawyer of the Year by the Consumer Protection Committee of The Florida Bar.

As a result of his experience and success  in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by The Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of his clients.

15

Mr. Yanchunis began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc. Privacy Litigation,* 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the placement of cookies on hard drives of internet users. Beginning in 2003, he served as co-Lead Counsel in the successful prosecution and settlement of privacy class action cases involving the protection of privacy rights of more than 200 million consumers under the Driver's Protection Privacy Act (DPPA) against the world's largest data and information brokers, including Experian, R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). See *Fresco v. Automotive Directions, Inc.,* No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.). Subsequently, He also served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed. Bank and Trust,* No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

He has been appointed and served in leadership positions a number of multidistrict litigation in the area of privacy and data breaches which have been actively litigated , some to the cusp of trial : *In re: Capital One Consumer Data Sec. Breach Litig.,* No. 1:19-MD-2915-AJT (E.D. Va.) (court approved settlement for $190,000,000)(Co Lead Counsel); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-MD-02752-LHK (N.D. Cal.) ("Yahoo") (Lead Counsel) (court approved settlement for $117,500,000 for US and Israeli citizens); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.,* No. 1:14-md-02583-TWT (N.D. Ga.) (co-Lead Counsel) (court approved settlement for $29,025,000); *In Re: Equifax, Inc. Cust. Data Sec. Breach Litig.*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (court approved settlement for $380.5 million); *In re: U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.,* 1:15-mc-01394-ABJ (D.D.C.) ("OPM") (member of the Executive Committee) (court approved a

settlement of $60 million); *In re Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 2522 (D. Minn.) (Executive Committee member) (court approved settlement on behalf of a class of approximately 100 million consumers).

His court-appointed leadership experience in non-MDL, data breach class actions extends to many more  cases which he has litigated and settled, and includes one of the few contested certifications in a data breach case: *Schmidt, et al., v. Facebook, Inc.,* No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) ("Facebook") (class certified for 8 million U.S. residents, subsequently settled the class and approved by the court), and a contested certification in a data privacy case, *Rodriguez v. Google LLC*, No. 3:20-cv-04688-RS (N.D. Cal.) (certifying monetary and injunctive class relief, set for trial in February 2025); and *Brown v. Google, LLC,* No. 4:20-cv-03664-YGR, (N.D. Cal.). In addition to his success at the trail court level , he has also led a team of lawyers in obtaining  four Circuit opinions in the last 365 days : *Ford v. Sandhills Medical Foundation, Inc.,* No. 22-2268(4th Cir March 29, 2024); *Ramirez v. The Paradies Shops, LLC,* No. 22-12853(11th. Cir. June 5, 2023); *Bohnak v. Marsh & McLennan Companies, Inc.,* No. 22-319(2d Cir. Aug. 23,2023); *Sheffler v. Americold Realty Trust,* No. 22-11789( 11th Cir. June 9,2023).

His experience in these major data breach matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs in major data breach cases such as Capital One, Yahoo, Google, and Facebook. In addition, he has defended experts used in these cases and also deposed defense liability and damage experts.

As result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation. He was also appointed by The Florida Supreme Court to enforce one of its orders for indirect criminal contempt, which

led to the incarceration of the respondent. He is a frequent lecturer on data privacy and class litigation nationally and internationally, including at international conferences, in Haifa, Israel, in Mexico, the United Kingdom and the Netherlands. Later this year he is speaking on data privacy at conferences in London and Lisbon.

He has served in a number of leadership positions in The Florida Bar, having been elected to two terms in The Young Lawyers Division of The Florida Bar, to two terms to The Board of Governors of The Florida Bar, and he was appointed by The Florida Supreme Court to serve a 5 year term as a Member of The Florida Board of Bar Examiners, and today he continues to serve as an emeritus member. He has been a member of numerous committees of The Florida Bar, and been appointed chair of many of them. Today he serves on The Florida Bar's data privacy and cyber security committee, which we as formed last year.

While at the University of Florida, Mr. Yanchunis was a member of Florida Blue Key and Omicron Delta Kappa. He received his Juris Doctor degree from the South Texas College of Law in 1980, where he graduated magna cum laude. He attended law school at night and worked full time during the day. During law school, Mr. Yanchunis was a member of the Order of the Lytae, Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal.

### 3. Proposed Interim Co-Lead Counsel Are Uniquely Familiar with the Applicable Law.

As demonstrated above, Proposed Interim Co-Lead Counsel is knowledgeable about the applicable law. Proposed Interim Co-Lead Counsel has successfully litigated contested class certification in privacy cases at the federal district court level and have obtained significant district court, and federal appellate decisions advancing the law in data privacy. Litigating data breach class actions often entails extensive factual discovery, retention of experts, and background knowledge in the technology and practices involved. Recurring issues of class certification,

damages, and injunctive relief require counsel that have already learned these lessons and achieved legal rulings that facilitate prosecution. Proposed Interim Co-Lead Counsel's extensive experience regarding the statutes and claims at issue here, along with his substantial track record of success, will allow them to skillfully litigate this case in the best interests of Plaintiffs and the putative class.

### 4.  Proposed Interim Co-Lead Counsel Will Commit All Necessary Resources to Representing the Class.

The final Rule 23(g)(1)(C)(i) factor concerns the resources counsel will commit to the case, and also strongly supports the appointment of Proposed Interim Co-Lead Counsel. Proposed Interim Co-Lead Counsel manages a well-established and successful law firm that can and will provide the resources and personnel necessary to pursue this case, a fact they have demonstrated in previous data breach class actions. The firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases which will benefit Plaintiffs and the putative class. Proposed Interim Co-Lead Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation and proceed to trial expeditiously.

### 5.  Additional Factors Support Appointment Under 23(g)(1)(B).

The Court may also consider other matters in making appointments, under Rule 23(g)(1)(B). One such consideration here is that Proposed Interim Co-Lead Counsel reached consensus among counsel who have filed cases in this Court to date about the proposed leadership structure. Rather than file competing leadership applications, counsel met and conferred and agreed that it is in the best interest of the plaintiffs and putative class members to form a unified front and cooperatively litigate the claims arising from the Data Breach against Defendants in this action. This private ordering further supports the requested appointments. MANUAL FOR COMPLEX

Litig. (4th ed. 2004) §§ 10.22, 21.272.

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully ask the Court to grant this motion and enter an order: (1) consolidating the Related Actions; (2) appointing Jeff Ostrow and John A. Yanchunis as Interim Co-Lead Counsel; (3) administratively closing the Related Actions, including any of Defendants' responsive pleading deadlines, and require the filing of a Consolidated Class Action Complaint within 14 days of entry of an order consolidating the cases and appointing leadership; and (4) setting the deadline for Defendants' response(s) to the Consolidated Class Action Complaint as 30 days after the Consolidated Class Action Complaint is filed, and in the event that Defendants' response(s) are a motion to dismiss, setting the deadline of 30 days thereafter for Plaintiffs' response(s) thereto, followed by 15 days thereafter for Defendants' reply(ies).

Dated: May 6, 2024                                       Respectfully submitted,

                                                                        */s/ Jeff Ostrow*
                                                                        Jeff Ostrow FBN 121452
                                                                        **KOPELOWITZ OSTROW P.A.**
                                                                        One West Las Olas Blvd., Suite 500
                                                                        Fort Lauderdale, Florida 33301
                                                                        Telephone: 954-332-4200
                                                                        ostrow@kolawyers.com

                                                                        John Allen Yanchunis FBN 324681
                                                                        **MORGAN & MORGAN**
                                                                        **COMPLEX LITIGATION GROUP**
                                                                        201 N. Franklin St., 7th Floor
                                                                        Tampa, FL 33602
                                                                        Telephone: (813) 275-5272
                                                                        jyanchunis@forthepeople.com

                                                                        *Proposed Interim Co-Lead Counsel for*
                                                                        *Plaintiffs and the Proposed Class*

                                                                        Joshua R. Jacobson FBN 1002264
                                                                        Jacob L. Phillips FBN 120130

**JACOBSON PHILLIPS PLLC**
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: 407-612-2206
joshua@jacobsonphillips.com
jacob@jacobsonphillips.com

*Counsel for Plaintiff Cravens and the*
*Proposed Class*

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Plaintiff's counsel has conferred with all other Plaintiffs' counsel in the Related Actions, and with Defendants' counsel, and is authorized to state that all consent to the relief requested in this Motion. Defendants further state that they reserve all rights, including the right to oppose class certification.

*/s/ Jeff Ostrow*_____
Jeff Ostrow

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 6th day of May, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

*/s/ Jeff Ostrow*_____
Jeff Ostrow