**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ANDRE CRAVENS, RYAN GAWRONSKI, DIANNA J. VIVEROS, GWENDOLYN KENNEDY, JEREMY ANGELLE and JOSEPH TYLER HALEY, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GARDA CL SOUTHEAST, INC., GARDA, CL GREAT LAKES, INC., GARDA CL CENTRAL, INC., GARDA CL SOUTHWEST, INC., AND GARDAWORLD CASH SERVICES, INC. D/B/A GARDAWORLD CASH U.S., <br><br> Defendants. | CASE NO. 9:24-CV-80400-BER |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs, supported by the Joint Declaration of Class Counsel ("Joint Decl."), attached as **Exhibit B**, and the Declaration of Robert Cormio of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Admin. Decl."), attached as **Exhibit C**.

**I.    INTRODUCTION**

On March 8, 2025, this Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits including (1) a non-reversionary, all cash $1,500,000.00 Settlement Fund, from which approximately 40,000 Settlement Class Members may elect to receive Cash Payments and Credit Monitoring; and (2) non-monetary relief in the form of improved cybersecurity measures. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees and costs.

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement and Releases, attached as **Exhibit A**.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for an award of attorneys' fees and costs. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and only one member of the Settlement Class has opted-out. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II.   PROCEDURAL HISTORY

This Action arises from a Data Incident that Plaintiffs allege compromised the security of their and Settlement Class Members' Private Information, including but not limited to data Defendant acquired from current and former employees and job applicants, and which Plaintiffs allege Defendant was duty bound to protect from unauthorized persons. The Private Information affected in the Data Incident may have included one or more of the following: names, addresses, Social Security numbers, driver's license numbers, dates of birth, health insurance and benefit information, and medical information, all of which allow cybercriminals to commit identity theft. Defendant contends it immediately stopped the attempted exfiltration (illegal transfer) so the hackers downloaded only a fraction of the impacted files, and subsequently notified potentially impacted individuals and offered complimentary credit monitoring services and other mitigation support, in an abundance of caution. To avoid the risk, delay, and uncertainty of continued litigation, and without any admission of liability or on the merit of the claims, the Parties agree to settle the Action.

Defendant is a cash logistics company that offers secure transportation and cash vault services for businesses and financial institutions. Agreement ¶ 1. In operating its business, Defendant collects, maintains, and stores Private Information pertaining to its current and former employees and applicants, and/or other third parties. *Id.* On or about November 16, 2023, Defendant noticed suspicious activity on its network. *Id.* ¶ 2. Defendant launched an investigation revealing that between October 20, 2023, and November 16, 2023, a cybercriminal accessed the Private Information belonging to Defendant's current and former employees and applicants (Plaintiffs and the Settlement Class). *Id.* On March 22, 2024, and in an abundance of caution, Defendant began notifying 39,928 potentially impacted individuals by mail that their Private

Information may have been impacted by the Data Incident. *Id.* ¶ 3.

On April 2, 2024, Plaintiff Andre Cravens filed the first putative class action complaint against Defendant asserting several causes of action arising from the Data Incident. Agreement ¶ 4. Defendant was named in five other Related Actions in the Southern District of Florida, which are materially and substantively identical as they have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Incident. *Id.* ¶ 5. A sixth California action was also filed and dismissed. *Id*. On May 6, 2024, Plaintiffs in the Related Actions filed a Motion to Consolidate Actions, Appoint Interim Co-Lead Counsel, and Set Schedule. *Id.* ¶ 6. On May 8, 2024, the Court granted the motion and appointed Jeff Ostrow and John Yanchunis as Co-Lead Counsel. *Id.* ¶ 7.

On May 28, 2024, Plaintiffs filed the Consolidated Complaint alleging negligence, breach of implied contract, invasion of privacy, unjust enrichment, breach of fiduciary duty, Florida, Louisiana, and Illinois statutory claims, and a declaratory judgment claim. *Id*. ¶ 9. The Parties filed their Joint Scheduling Report on June 11, 2024. *Id.* ¶ 10. On July 8, 2024, Defendant filed its Motion to Dismiss, to which Plaintiffs filed their opposition on July 22, 2024, and Defendant replied on August 6, 2024. *Id.* ¶ 11. On December 6, 2024, the Motion to Dismiss was granted in part and denied in part. *Id.* ¶ 14.

On August 20, 2024, while Defendant's Motion to Dismiss was pending, the Parties exchanged Initial Disclosures. *Id.* ¶ 12. The Parties also prepared a joint motion for entry of a confidentiality order and an order approving the Parties' agreement on electronic discovery, which was filed on September 20, 2024, and granted the same day. *Id.* ¶ 13.

The Parties also began discussing settlement and scheduled a mediation for December 16, 2024, with the Hon. John W. Thornton, Jr. (Ret.) of JAMS. *Id.* ¶ 15. Before mediation, Plaintiffs propounded informal discovery requests to which Defendant responded by providing information related to, among other things, the nature and cause of the incident, the number and geographic location of victims impacted by the Data Incident, and the specific type of information breached. Joint Decl. ¶ 12. The Parties also submitted mediation statements. *Id.* Counsel for the Parties, who had negotiated mediated settlements in the past, reached a settlement in principle during the mediation. *Id.* ¶ 14. Over the following weeks the Parties were able to agree on the material Settlement terms with Judge Thornton's assistance. *Id.* On December 18, 2024, the Parties filed a Joint Notice of Settlement and Motion to Stay all Deadlines Pending Approval of Class Action

Settlement, which was granted that day. Agreement ¶ 16. The Parties then worked diligently to finalize the terms of the Agreement and ancillary documents. Joint. Decl. ¶ 15. The Parties did not discuss attorneys' fees and costs until after they agreed on all material Settlement terms. *Id.* ¶ 16.

Plaintiffs filed their Motion for Preliminary Approval on January 31, 2025, and the Court entered the Preliminary Approval Order on March 28, 2025. *Id.* ¶ 18. The Notice Program has been completed in compliance with the Agreement and the Preliminary Approval Order, and the Claims Process is ongoing. *See generally* Admin. Decl.

### III. SUMMARY OF THE SETTLEMENT

**A.  Settlement Class.** Plaintiffs seek Final Approval on behalf of the following Settlement Class:

> All living individuals residing in the United States who Defendant sent or attempted to send a notice that their Private Information may have been impacted in the Data Incident.

Excluded from the Settlement Class are (1) all persons who are directors or officers of Defendant; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any individual that timely and validly opted-out of the Settlement. Agreement ¶¶ 67-68.

**B.  Settlement Fund.** The Settlement requires Defendant to create a non-reversionary, all cash $1,500,000.00 Settlement Fund. *Id.* ¶ 70. Defendant funded the Escrow Account establishing the Settlement Fund within 10 days of Preliminary Approval. *Id.* ¶ 73. The Settlement Fund will be used to pay (1) Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel; and (3) all Settlement Administration Costs. *Id.* Defendant is not responsible for any other payments under the Settlement. *Id.*

**C.  Settlement Class Member Benefits.** When submitting a Claim, Settlement Class Members may elect to receive a Cash Payment and Credit Monitoring. *Id.* ¶ 76. Cash Payments under the Settlement may be subject to a *pro rata* increase or decrease on an equal percentage basis, depending on the total value of all Valid Claims received. *Id.* ¶ 77. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against Defendant without receiving Settlement Class Member Benefits. *Id.* ¶ 96.

***Cash Payments:*** Settlement Class Members may elect to receive either Cash Payment A – Documented Losses or Cash Payment B – Flat Cash. *Id.* ¶ 76. Settlement Class Members who

4

elect Cash Payment A – Documented Losses may receive compensation up to $15,000.00 per Settlement Class Member for reasonable documented losses related to the Data Incident. *Id.* ¶ 76.a. As an alternative to Cash Payment A, Settlement Class Members may elect Cash Payment B and receive a flat cash payment in an estimated amount of $150.00. *Id.* ¶ 76.b.

*Credit Monitoring:* In addition to a Cash Payment, Settlement Class Members may elect to receive three years of Credit Monitoring with three credit bureaus, which has a value of $90.00 per year. *Id.* ¶ 76.c.

*Business Practice Changes:* In addition to the monetary Settlement Class Member Benefits outlined above, Defendant has confirmed it has undertaken or will undertake reasonable steps to further secure its systems and environments. Agreement ¶ 78.

D.   **Release**. In exchange for the Settlement Class Member Benefits, Plaintiffs and Settlement Class Members agree to release the Released Parties from any and all Released Claims, i.e., claims arising out of or relating to the Data Incident. Agreement ¶ 115. The detailed Release language is found in Section XIV of the Agreement.

E.   **Disposition of Residual Funds.** Any funds remaining in the Settlement Fund 20 days following the 180-day period to cash checks or for Settlement Class Members to select the form of electronic payment, following payment of Cash Payments to Settlement Class Members, any residual funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient approved by the Court. *Id.* ¶ 114. The Parties propose the Legal Aid Society of Palm Beach County as the *cy pres* recipient. *Id.*

F.   **Attorneys' Fees and Costs.** Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of 33.33% of the Settlement Fund ($500,000.00) and $22,669.19 for reimbursement of costs. Joint Decl. ¶ 39. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *Id*. ¶ 46.

IV.   **SUMMARY OF NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS**

A.   **Notice Program** .The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 4. The Settlement Administrator implemented the Notice Program, which consisted of (1) the Email Notice and/or Postcard Notice and (2) the Long Form Notice available on the Settlement Website and which the Settlement Administrator mailed to any Settlement Class member who requested it. *Id.* ¶¶ 9-10. The Email Notices and Postcard Notices

clearly and concisely summarized the Settlement and the Settlement Class' legal rights, and directed the Settlement Class to visit the Settlement Website for additional information. *Id*. ¶¶ 9-10 and Exs. 3-4 thereto.

The Settlement Administrator's Declaration details the Notice process. *Id*. ¶¶ 5-15. Settlement Class Members whose email addresses were available were sent Email Notices, and Settlement Class Members whose email addresses were not available or whose Email Notice bounced back were sent Postcard Notices by mail. *Id.* ¶¶ 9-10. Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id*. ¶¶ 13-14. *Id.* As of July 24, 2025, individual notice efforts have reached approximately 95.9% of the identified Settlement Class. *Id.* ¶ 15.

Additionally, a Long Form Notice and Claim Form were mailed on request via the toll-free telephone number or other means. *Id.* ¶ 11. As of July 24, 2025, the Settlement Administrator mailed one Claim package with the Long Form Notice and Claim Form. *Id*.

On April 28, 2025, the Settlement Administrator established a dedicated Settlement Website (www.gardasettlement.com) for the Settlement Class to obtain detailed information about the Action and the Settlement and review important documents, including the Complaint, Long Form Notice, Settlement Agreement, Motion for Preliminary Approval, Preliminary Approval Order, and Claim Form. *Id.* ¶ 8. This Motion for Final Approval will be posted upon filing. The Settlement Website also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* As of July 24, 2025, there have been 3,040 unique visits to the Settlement Website, and 4,435 web pages have been presented. *Id.*

Also on April 28, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. *Id.* ¶ 4. As of July 24, 2025, there have been 201 calls to the toll-free telephone number representing 683 minutes of use. *Id.*

A postal mailing address was established and is available to contact the Settlement Administrator to request additional information or ask questions. *Id.* ¶ 6.

B. **Claims Process.** The timing of the Claims Process was structured to ensure that all members of the Settlement Class had adequate time to review the Settlement terms, decide whether

to submit a Claim, opt-out, or object to the Settlement, compile documents supporting their Claims, and submit Claims for Settlement Class Member Benefits. Settlement Class Members may continue to submit Claim Forms online or by mail prior to the Claim Form Deadline. Settlement Class Members have the option of requesting a digital cash payment or a traditional paper check on the Claim Form. Agreement ¶ 108.

The Claim Form Deadline is August 26, 2025. Admin. Decl. ¶ 16. As of July 24, 2025, the Settlement Administrator has received 2,730 Claim Forms (1,452 online and 1,278 paper). *Id.* ¶ 17. These numbers are preliminary. *Id.* Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

    **C.**    **Opt-Outs and Objections.** The Objection and Opt-Out Periods end on August 11, 2025. *Id.* ¶ 19. As of July 24, 2025, the Settlement Administrator has received only one opt-out request. *Id*. ¶ 20. The Settlement Administrator and Parties are not aware of any objections. *Id*.; Joint Decl. ¶ 46.

**V.**    **ARGUMENT**

    **A.**    **The Settlement Class Should Be Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.**

The Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Rule 23(a) and (b)(3). In compliance with Rule 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. [ECF No. 64 at 2–3]. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate their arguments from the Motion for Preliminary Approval by reference. [ECF No. 59 at 7–13].

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. For the same reasons the Court found them adequate under Rule 23(a)(4), the Court should also affirm the appointment of Jeff Ostrow and John Yanchunis as Class Counsel. Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work

7

counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 4. Class Counsel have devoted substantial time and resources to this Action and will continue to do so. *Id.* ¶ 22.

Finally, the Court should confirm its appointment of Kroll as the Settlement Administrator.

### B. The Settlement Should be Finally Approved.

The Preliminary Approval Order found the Court would be likely to finally approve the Settlement after considering and finding the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the "*Bennett*" factors. [ECF No. 64 at 3]. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Settlement Class' positive reaction to the Settlement with no objections and over 2,700 Claims to date (the Claim Form Deadline is not until August 26, 2025). Admin. Decl. ¶¶ 16-17.

The Rule 23(e)(2) factors are as follows:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the

settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

***Adequacy of Representation (Rule 23(e)(2)(A))*:** This first factor "weighs heavily in favor of granting Final Approval because both Class Counsel and the Class Representative have adequately represented the Class." *In re Fortra File Transfer Software Data Security Breach Litig.*, No. 24-MD-03090-RAR, 2025 WL 457896, at *8 (S.D. Fla. Feb. 11, 2025) (citing *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024)). While litigation in *Mednax* proceeded to a later stage than here before the parties agreed to settlement, Class Counsel, who were also lead counsel in *Fortra* and efficiently settled that case early, thoroughly investigated and analyzed Plaintiffs' claims, and fully briefed the Motion to Dismiss filed by Defendant. Joint Decl. ¶ 9. Class Counsel also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *Id.* ¶ 22; *Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn pertinent facts including what caused the Data Incident and the Private Information impacted in the Data Incident, before attending a full-day mediation session. Joint Decl. ¶¶ 11-13, 22. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *Id.* ¶¶ 21-22.

Also, Class Representatives have demonstrated their adequacy by (a) having a genuine personal interest in the outcome of the case; (b) selecting well-qualified Class Counsel; (c) producing information and documents to Class Counsel to permit investigation and development of the complaints; (d) being available as needed throughout the litigation; and (e) monitoring the Action. *Id*. ¶ 37. Class Representatives' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 35. Class Representatives have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id.*

***Settlement Negotiated at Arm's Length (Rule 23(e)(2)(B) and Bennett Factors 5–6)*:** The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator, Judge Thornton. *Id.* ¶¶ 14, 17. "[T]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting [ ] approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 457896, at *8 (quoting *Mednax*, 2024 WL 1554329, at *6). Though the

Settlement was reached at any early stage, the record reflects that this Action has been thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*; *see also, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

Currently there is no opposition to the Settlement and only one opt-out. Class Counsel will respond to objections before the Final Approval Hearing if any are submitted.

***Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and Bennett Factors 1–4)*:** Although Plaintiffs believe the claims asserted are meritorious and the Settlement Class would ultimately prevail at trial, continued, complex, and expensive litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. "'[D]ata breach class actions are risky cases." *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7). The Settlement's fairness is underscored by the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the litigation's expense and likely duration. *Id.* Given those risks, the Settlement provides outstanding benefits. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *FultonGreen v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare").

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, courts must also examine the range of possible damages the plaintiffs could recover at trial and combine this with an analysis of the plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate"). Here, Settlement Class Members may elect Cash Payment A for reimbursement of documented losses up to $15,000.00, or they may elect Cash Payment B for an estimated $150.00 flat cash

10

payment. Agreement ¶ 76. Also, Settlement Class Members may elect Credit Monitoring valued at $90.00 per year. *Id*.

A few recent examples of approved data breach settlements from around the country, which demonstrate how the instant Settlement, compares very favorably to other similar common fund data breach settlements, include the following: *James, et al. v. DAVACO Inc, et al.*, No. 3:21-CV-02318-M (N.D. Tex.) ($540,000 for 14,193 class members); *Sanders, et al. v. Ibex Global Solutions Inc., et al.*, No. 1:22-cv-00591-TNM (D.D.C.) ($2,400,000 for 177,463 class members); *In re Snap Finance Data Breach*, No. 2:22cv00761-TS-JCB (D. Utah) ($1,800,000 for 60,902 class members); *Stein v. Ethos Technologies*, No. 3:22cv09203-SK (N.D. Cal.) ($1,000,000, plus cost of monitoring and business practice commitments outside the fund, for 35,985 class members); *Phelps v. Toyotetsu North America*, No. 6:22-cv-00106 (E.D. Ky.) ($400,000 for 12,000 class members); *McKittrick v. Allwell Behavorial*, No. CH-2022-0174 (Muskingum County, OH) ($650,000 for 31,944 class members); *Tafelski, et al. v. Logan*, No. ADV-22-0108 (Cascade County, MT) ($4,300,000 for 202,677 class members).

Also, the Claims Process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check, along with Credit Monitoring if elected. Agreement ¶ 83k. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 48. "'Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.'" *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329, at *7).

Finally, the Parties' agreements are all set forth in the Agreement. Joint Decl. ¶ 17.

**Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))**: As the court found in *Fortra*, 2025 WL 457896, at *9, and *Mednax*, 2024 WL 1554329 at *7, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "'[t]he method of distributing the settlement benefits will be equitable and effective.'" *Fortra*, 2025 WL 457896, at *9 (quoting *Mednax*, 2024 WL 1554329 at *7). Further, the attorneys' fees do not impact the other terms of the Agreement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee and costs award. Agreement ¶ 113.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

### C. Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. The Settlement Class received Notice of the Settlement and members have the opportunity to be heard and participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). This Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Postcard Notice and Long Form Notice posted on the Settlement Website is the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement to all Class Members. [ECF No. 64 at 5].

The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Admin. Decl. ¶ 12. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement Information. *Id.* ¶¶ 5, 8. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. *Id.* ¶ 12.

### D. The Settlement Administration Costs Are Reasonable.

The estimated Settlement Administration Costs total $78,114.74, a substantial portion of which have already been incurred for the Notice Program, and the remaining portion of which will be incurred for Claim processing and payments following Final Approval, along with other Settlement Administration services outlined in the Settlement Agreement. Joint Decl. ¶ 49. These costs are required to complete the Settlement. *Id.*

### E. Application for Attorneys' Fees and Costs

Pursuant to the Settlement and Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $500,000.00, which is equal to 33.33% of the $1,500,000.00 Settlement Fund, and $22,669.19 to reimburse them for litigation costs. *Id*. ¶ 39. The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

#### 1. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs: it "serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted).

"The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit,

attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund" – though "an upper limit of 50 percent of the fund may be stated as a general rule." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher in view of the circumstances of the case). Class Counsel's fee request falls within this accepted range.

### 2. Application of the *Camden I* Factors Supports the Requested Fee.

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3.[2] These twelve factors are guidelines and are not exclusive; "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by

---

[2] The seventh and eleventh factors are relatively neutral, though it has certainly been important to Class Counsel to efficiently obtain the Settlement benefits for the Settlement Class impacted by the Data Incident.

14

counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

### a. The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Joint Decl. ¶ 43. The organization of Class Counsel ensured the work was coordinated to maximize efficiency and minimize duplication of effort. *Id*. Class Counsel devoted substantial time to investigating the claims. *Id.* Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were also dedicated to working with experts, exchanging formal and informal discovery, consolidating and organizing the Related Actions, opposing Defendant's Motion to Dismiss, and preparing for and attending a successful mediation. *Id.* Significant time was then devoted to negotiating and drafting the Settlement Agreement, the Preliminary Approval process, and to all actions required thereafter by the Agreement and the Preliminary Approval Order. *Id*. Class Counsel has spent substantial time leading up to this Motion for Final Approval, addressing the Notice Program, Claims Process, and preparing this filing. *Id.* Time will also be spent preparing for and attending the Final Approval Hearing. *Id.* Finally, should Final Approval be granted, Class Counsel will devote substantial time to Settlement administration to ensure Valid Claims are paid and the Settlement is fully implemented. *Id.*

Class Counsel's coordinated work paid dividends for the Settlement Class. *Id.* ¶ 44. Each of the above-described efforts was essential to achieving the Settlement. *Id.* Class Counsel's time and resources devoted to prosecuting and settling this Action justify the requested attorneys' fee. *Id.*

### b. The Novelty and Difficulty of the Relevant Questions Required Skilled and Experienced Counsel.

This Court has witnessed the quality of Class Counsel's legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. *Id.* ¶ 45. This factor weighs heavily in support of the requested attorneys' fee award. In fact, courts routinely recognize the novelty and difficulty of the questions present in a case as a "significant factor to be considered in making a fee award." *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class actions are

15

notoriously risky and complex cases that present novel issues of law and fact as data security continues to develop and evolve. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. l:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) (recognizing that "[data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are not always predictable."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex.").

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendant is represented by extremely capable counsel who are worthy, highly competent adversaries. Joint Decl. ¶ 27; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

### c. *Class Counsel Achieved a Successful Result.*

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result, with $1,500,000.00 recovered for the Settlement Class, affording them meaningful Settlement Class Member Benefits designed to meet the typical repercussions faced by consumers following a data breach. The risk involved is emphasized by the fact that, historically, data breach class actions face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification); *FultonGreen*, 2019 WL 4677954 at *8 (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further, maintaining class certification through trial is another overarching risk. Joint Decl. ¶ 31. Considering Defendant has compelling defenses, continuing to pursue this case posed a significant risk for Plaintiffs and the Settlement Class. *Id.* Therefore, Class Counsel's risks weigh in favor of Class Counsel's requested fee.

### d. *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis and Lost Opportunity for Other Employment.*

In undertaking to prosecute this case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment, while foregoing the opportunity to work on other cases. *Id.* ¶¶ 41-42. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)).

16

Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Joint Decl. ¶¶ 39, 42. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested attorneys' fee:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

### e. The Requested Fee Comports with Fee Awards in Similar Cases.

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the Eleventh Circuit and in the Southern District of Florida. *See Mednax*, 2024 WL 4415214, at *5 (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g.*, *Fortra*, 2025 WL 457896, at *11-12 (awarding 33.33%); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding 35%); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33 % of settlement).

Examples of attorneys' fee awards of 33.33% or higher in data breach cases include *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), DE# 48 (approving 33.33% of the settlement fund); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (approving one-third of the settlement fund); *Kondo, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, DE# 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-

17

cv-12100 (D. Mass.), DE# 12 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, DE# 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, DE# 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc*., No. 1:21-cv-01250-RBJ, DE# 50 (D. Colo. Aug. 22, 2022) (same).

Class Counsel's request is also reasonable considering the market rate in the private marketplace "where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* Indeed, this Court has recognized a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016); *see also In re Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1366 (S.D. Fla. 2011) (acknowledging class counsel's requested fee of 30% "falls on the low end of the average in the private marketplace" where contingency fees of up to 40% are customary in the private marketplace).

### f. *The Litigation Costs Are Reasonable.*

Class Counsel request reimbursement of $22,669.19 for litigation costs that Class Counsel incurred and paid in connection with the prosecution of the Action and the Settlement. The costs include fees related to filing, service of process, travel, experts, and mediation. Joint Decl. ¶ 39. Ordinary law firm overhead costs, including postage and legal research, are not included. Plaintiffs' attorneys are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefited the class. *Morgan*, 301 F. Supp. 3d at 1258. Further, pursuant to Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens*, 118 F.R.D. at 549 (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred).

## V. CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement

18

purposes, pursuant to Rule 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of Jeff Ostrow and John Yanchunis as Class Counsel; (5) awarding Class Counsel $500,000.00 for attorneys' fees and $22,669.19 for litigation costs; (6) approving payment of the Settlement Administration Costs; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit D***.

## CERTIFICATE OF LOCAL RULE 7.1(a)(3) CONFERRAL

Plaintiffs' counsel certifies that Plaintiffs have conferred with Defendant regarding the relief requested herein and Defendant does not oppose the relief requested.

July 25, 2025.

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : 954.332.4200
ostrow@kolawyers.com

John Yanchunis FBN 324681
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: 813.275.5272
jyanchunis@forthepeople.com

*Class Counsel*